_Moore v. Gholson et al._

L. B. Moore _v._ Samuel J. Gholson et al., Admrs., &c.

1. Pleading: less degree of certainty required when the facts lie exclusively in the knowledge of the opposite party.—Less particularity, in pleading, is required where the facts lie more in the knowledge of the opposite party, than of the party pleading; and hence, when the defendant executed a writing to the plaintiff's intestate, acknowledging the receipt of "claims on various individuals," amounting to a sum "between four and five hundred dollars," and which he promised to collect and pay to the decedent, in a suit thereon to recover damages, upon the ground that the defendant had negligently failed to take steps to collect them, whereby some of the claims had become worthless, and some had become barred by the Statute of Limitations, it is unnecessary for the plaintiff to describe the claims in his declarations with more particularity than they are set out in the receipt sued on.

2. Bailment: bailee without hire responsible for negligence.—Where a person receives claims from the owner, which he promises to collect and pay over without compensation, he is bound to use ordinary diligence to collect them; and if, through his negligence, the claims are not collected, and are thereby lost to the owner, he will be responsible for the damages sustained.

In error from the Circuit Court of Monroe county. Hon. William Cothran, judge.

The defendants in error, as administrators of G. M. Ragsdale, deceased, brought an action, under the Pleading Act of 1850, in the Circuit Court of Monroe county, against Moore, the plaintiff in error, upon an instrument, in the following words:—

"I have in my possession claims on various individuals, amounting to between four and five hundred dollars, being the residue of collaterals, transferred to me by Wm. H. Wheeler, on account of claims due from —— to G. M. Ragsdale, for between nine and ten hundred dollars; now, the first above mentioned I am to endeavor to collect, and if collected, pay the same on a claim, or claims, now sued on in the Circuit Court of Monroe county, Mississippi, against Moore & Ragsdale. This the 17th day of February, 1848.

(Signed)        "L. B. Moore."

Demurrers were sustained to the original, and to the first amended

Moore *v.* Gholson et al.

declarations. The plaintiff then filed another amended declaration, which, after describing the instrument sued on, was as follows :—

" And the said plaintiff avers that the said claims in the above-described instrument were not collected and paid on the said claims, then sued on against Moore & Ragsdale, in the Circuit Court of Monroe county, Mississippi; or any part thereof. That the said claims were good and valid claims against good and solvent men, which the said Moore could have collected, if he had endeavored to do so ; nor did the said Moore return the said claims to the plaintiff's intestate in his lifetime, nor has he delivered them to plaintiff since his death; but the said Moore wholly failed to collect said claims, and to pay the same on a certain claim, or claims, then pending in the Circuit Court of Monroe county, Mississippi, against 'Moore & Ragsdale,' or to either of the said claims, or to said Ragsdale in his lifetime, or to the plaintiff since his death, although demanded of him."

The declaration then states that there were two claims in suit against Moore & Ragsdale, on the 17th of February, 1848, and that Moore paid the same, and afterwards recovered a judgment for the amount thereof against the plaintiffs as administrators of Ragsdale, and which they paid out of the assets of said Ragsdale, other than the claims placed in the hands of Moore. The declaration then concludes as follows :—

" That, by reason of said Moore not having collected the said claims and paid them over, as he undertook and promised to do, or to hand them back, he has greatly damaged the plaintiff's intestate, or the plaintiff, by permitting them to become wholly valueless, by reason of their being barred by the Statute of Limitations, and many of the parties who owed them removing from the country and becoming insolvent, and by forcing said plaintiff to pay said claims sued on in the Circuit Court of Monroe county aforesaid, by other means ; and by reason of his failing and refusing to return said claims, or the money for them, when called on and demanded of him, whereby plaintiffs are damaged one thousand dollars," &c.

The defendant demurred to this amended declaration, and assigned for cause :—

1. That the declaration does not describe the particular claims mentioned in the instrument sued on.

2. That the instrument sued on appears on its face to be voluntary, and no consideration valuable in law is averred in the declaration.

3. That the declaration does not aver any demand for said claims of defendant.

4. That the declaration does not aver or charge any damage to plaintiffs from the premises, except that some of the parties who owed the claims have become insolvent, and it does not aver or show which of said parties have so become insolvent.

The demurrer was overruled; and the defendant then pleaded: 1st, a general denial; and 2d, that there was no consideration for the agreement sued on. Upon both these pleas issues were taken, and the cause submitted to a jury.

Upon the trial, the plaintiff introduced in evidence:—

1. The instrument sued on and hereinbefore copied.

2. A letter from Moore to Ragsdale, dated 22d March, 1847, in which he stated that he had settled with Wheeler by taking as collateral security "small notes," and that "the notes were quite all good," and that he thought the "money could be made on them in a few weeks," which would be sooner than it could have been collected from Wheeler by suit.

3. They then proved from the record of the court that on the 17th of February, A. D. 1848, the date of the instrument sued on, there was pending in said court a suit in favor of L. M. Wiley & Co., against Moore & Ragsdale, as partners, in which suit judgment was rendered against the plaintiffs in April, 1848, for the sum of $482 43, which was the only suit then pending against said Moore & Ragsdale.

4. That Moore paid this judgment, and afterwards recovered judgment against the plaintiff for the amount thereof.

5. That before the commencement of this suit, they demanded of the defendant the return of the claims referred to in the receipt of February 17th, 1848, or the payment of them.

This being all the evidence, the defendant demurred to the same, and the plaintiff joined in the demurrer.

The court overruled the demurrer, and rendered judgment for the plaintiff for $643 66 and costs.

From this judgment Moore prosecutes this writ of error.

*John B. Sale*, for the plaintiff in error.

1. The first error assigned is, that the Circuit Court overruled the demurrer of the defendant below to the plaintiffs' *second amended* complaint.

It is unnecessary here to go into a lengthy consideration of the merits of each ground of demurrer in the order in which they are set down. Their justness, if any, is readily apparent upon reference to the assignment in connection with the complaint.

It is confidently believed that they appropriately criticise the complaint throughout, which seems grossly defective in substance from beginning to end.

A general notice of the defects alluded to is sufficient for an intelligent legal mind, and I think must lead to the conclusion that the demurrer should have been sustained to this as well as to the two preceding complaints, which were successfully demurred to.

In the first place, it is difficult to discover whether the defendant is sought to be made liable for a *tort*, in having converted the "claims," or on a *contract* to collect and apply them ; and whether the action is in the nature of *trover* for the alleged conversion, *assumpsit* for a breach of the undertaking to collect and apply, or strictly in *case* for the consequential damage sustained by reason of the unreasonable retention of the "claims" till they had become unavailable through removal of the parties, or the Statute of Limitations. It seems provokingly enough to combine the *three*, beyond even the latitude of the Pleading Act of 1850, and in defiance of any analysis according to all known rules of pleading and practice. It is impossible to decide whether *non-assumpsit* or *not guilty* would be the appropriate general traverse.

This heterogeneousness (not strictly a *misjoinder*) is of itself a fatal defect.

In the next place, a painful *uncertainty* pervades the entire complaint. The defendant is not furnished with any issuable description of the "claims" which he is called upon to deliver or account for, so as to identify them, either as to their form, nature,

dates, maturity, amounts, makers, or payees.  A recovery in this action could not avail in bar of a future suit for any of the same claims by particular description.  The same uncertainty is grossly apparent in the allegation at the close of the immediate cause of the alleged damage, because some of the claims became barred by limitation, " and *many* of the parties who owed them had removed from the country and become insolvent."  How is the defendant enabled to relieve himself from liability by denying and disproving that any one *specific* claim is insolvent, or ever was good, or that it is barred by limitation, or that the party owing it had "left the country," or by alleging and proving that it had been collected and paid over, or duly returned to plaintiffs without collection ?

It is entirely undisclosed whether that specific claim was contemplated by the pleader in framing the complaint; or, if it were, whether it was intended to be included in either (and which ?) of those classes, said to be, barred by limitation, insolvent, or absent from the country.

I presume it would be difficult to invent a complaint more fully illustrating the definition, and exhibiting the evils of *uncertainty in pleading*.

Again, if we regard the action as in the nature of assumpsit, and founded on defendant's undertaking to collect and apply the " claims" referred to, that undertaking appears to be merely *voluntary* on the part of Moore, and therefore he can only be held liable for malfeasance or misfeasance at most, and not for nonfeasance.  As far as is shown by the writing copied into the complaint, or by the averments of the latter, it seems that Moore, at the date of the instrument, had in his hands a remnant of claims belonging to Ragsdale, which he voluntarily promises to collect, and apply the proceeds in payment of certain debts due by Ragsdale as a member of the former firm of Moore & Ragsdale, and which we infer the latter was in some way solely bound to provide for.  Moore's voluntary engagement, therefore, to collect Ragsdale's means, and with them to pay Ragsdale's debts, and his failure to do so, whereby the latter was compelled to pay them out of other funds, furnishes no cause of action against Moore; for it is without even the consideration of damage to the promisee, as Ragsdale only did what he was already bound to do, in paying *his*

*debts* to Greenways, Henry & Smith, and L. M. Wiley, whether it was done out of the one fund or the other.

For any of the grounds of demurrer assigned, I think it clear that it ought to have been sustained.

2. The second assignment of error questions the correctness of the judgment of the Circuit Court on the defendant's demurrer to the plaintiffs' evidence.

After the overruling of defendant's demurrer to the second amended complaint, and in obedience to the judgment of *respondeat ouster*, the defendant filed the answer of the general denial, and also a special answer of want of consideration. Upon these, issues were taken by plaintiffs, and, after he had closed his evidence, defendant demurred thereto; whereupon the court rendered judgment for plaintiffs.

I will here remark, in the outset, that, what I may say on this part of the case, is with a full acquiescence in the well-known doctrine that all facts, which the testimony of the plaintiffs legitimately tends to prove, and all just inferences which a jury might (legitimately, but not arbitrarily) make, are by the demurrer admitted as facts.

Upon the development of plaintiffs' proof, we are enabled to at least justly infer, as had been indistinctly adumbrated in the narrative of the complaint, that before the date of the receipt of February 17, 1848, which is the foundation of the action, Ragsdale had assumed to Moore to pay off a debt due by the firm of Moore & Ragsdale, upon which suit was then pending in the Circuit Court of Monroe in favor of the payees, L. M. Wiley & Co.; that Ragsdale was the equitable owner of the (undescribed) "claims," mentioned in the receipt, and which Moore had, as appears from his letter of March 22, 1847, procured for him from one Wheeler, as collateral security to a debt due by the latter to Ragsdale individually; that, at the date of the receipt, there remained on hand of these claims between $400 and $500 worth, which Ragsdale then dedicated to the payment of the debt aforesaid due to L. M. Wiley & Co., then in suit, and procured Moore to promise to "endeavor to collect" said "claims," and apply the proceeds in extinguishment of the debt to Wiley & Co.; that Moore failed to so collect and apply; and L. M. Wiley & Co. having, in the meantime, recovered

judgment in their suit against both Moore & Ragsdale, it was paid off by Moore, who thereupon sued Ragsdale upon his aforesaid assumption, and recovered of his administrators (the plaintiffs here), after his death, the amount of the judgment so paid to L. M. Wiley & Co. These facts, in connection with the allegations in the complaint, that the dedicated "claims" had become wholly lost to Ragsdale's estate, by reason of the accruing of the bar of limitation, and removal or insolvency of the parties, during Moore's delay in collecting, perhaps sufficiently make out a consideration for Moore's undertaking. At the same time they cut the knot appearing on the face of the declaration, as to the object and character of this action, and disclose that it is in the nature of assumpsit, and that its leading purpose is to recover the value of the claims as consequential damages, sustained on account of the breach of promise to collect and apply, and the subsequent worthlessness of the claims.

Under this view, the trover features disappear from the complaint, and the allegations of demand and refusal become surplusage, as it is not to be supposed that plaintiffs seek to recover, as their damages, the value of claims now worthless.

Regarding it in this light, I will now attempt to point out the proof which they were compelled to make, and notice as we proceed, the testimony as adduced.

1. The indulgence of the circuit judge, in considering the demurrer to the complaint, as to the uncertain and insufficient description and identity of the "claims" involved in controversy, should not have been extended to the plaintiffs' proof, unless by a perversion of the aphorism, that "one good turn deserves another."

The testimony, at least, should have more particularly described what the complaint had left entirely indefinite. In a second suit by same plaintiff, to recover the value of some of the same claims by description, defendant would not have it in his power to prove even by parol, as he might, that those claims had already been included in this litigation. This means of defence against repetition, every properly declared and properly tried cause should furnish.

If the allegations of the complaint here be true, the plaintiffs would, on proper proof, be entitled to recover the amount of the principal of each claim, with the interest thereon from the date of

its maturity. And yet, upon the proof as made, it was actually impossible for an honest jury, sworn "to find a true verdict according to the testimony," to even approximate accuracy as to the amount of the claims, either separately or in the aggregate. It will not avail to say that, according to the receipt, the aggregate amount was not less than $400, nor more than $500. It is not their province or privilege to arbitrarily compromise amounts or dates, and occupy sliding positions within the limits of extended margins. It is the duty of the litigants to inform their minds and consciences, and thus supply the ellipsis by tangible proof. I know that perfect accuracy is not predicable of the conclusions of the human mind at all times, and is not, therefore, to be always required. But I know, also, that it would be a very lax requirement, which could rest content with an approximation no nearer than within twenty-five per cent. of the mark. The mere necessities of the plaintiffs' case afford no warrant for a guessed-out verdict, made up by main strength, simply because, without it the plaintiffs must fail of a recovery. If there is an affirmative fact in their favor, they must prove it or fail.

Suppose the only proof to be, that the amount was between one and one thousand dollars. Although the testimony, as far as it goes, would be entirely admissible, yet no judge could say, upon a demurrer to the evidence, that a jury could be guided by that alone, to a legitimate and authorized conclusion as to any definite amount. True, this is an extreme fluctuation; but extremes best illustrate principles, by striking the sense more forcibly. The principle is the same in both cases. If the case supposed constitutes one extreme, a fluctuation of only twenty-five per cent. is yet not small enough to make the opposite one. At what point in the scale shall we stop? The law will not stop short of accuracy, or its reasonable equivalent.

So there was at least one member of the proof wanting, without which there should have been no recovery.

2. Another point to be proved, was the intestate's ownership of the claim. The receipt is an acknowledgment of the fact by defendant, and is sufficient.

3. A third indispensable fact is, that the claims were good at the date of the receipt, February 17th, 1848, and remained so long

enough to have been collected thereafter by due course of law. To establish this, reference was made, on trial, to the assertion of that fact in defendant's letter of March 22d, 1847, nearly twelve months before the date of the receipt. That letter was admissible for the purpose, and for that only, of explaining the origin and basis of the transaction, and how and why defendant came at first into possession of the "claims." It was also cumulative proof of the plaintiffs' proprietorship of them. But to show that they were good on 17th February, 1848 (nearly twelve months after date), and remained so thereafter long enough to have been collected by law, the letter was not only insufficient, but positively inadmissible. Had the question been asked of a witness on the stand, and he had answered that he was ignorant of their condition on 17th February, 1848, but knew that they were good twelve months before, the answer would have been ruled out. Suppose a discrediting witness called to impeach the credibility of another, when asked if he is acquainted with the other's general reputation for veracity in the neighborhood where he resides, should reply that he does not know what that reputation is at present, but knows what it was one year ago. He would not be allowed to testify further.

From the amount specified in the receipt, the claims must have been at least eight or ten in number, they all being "small notes," as said in the letter. Now, how could a jury have legitimately and justly inferred that the solvency of each maker, so fleeting and fluctuating a thing, remained the same from March 22d, 1847, till February 17th, 1848, and long enough thereafter for the money to be made by due course of law? They might imagine it, but they could not properly so find on their oaths.

4. Then, in order to make out the case for damages, it was next indispensable to be proved under the allegations of the complaint, that the claims were lost to plaintiffs, by being barred since by limitation. The only proof bearing on this point is directly to the contrary,—the letter.

The earliest time at which we can begin, is its date,—March 22d, 1847. The claims being notes, the shortest limitation was six years, which would have brought March 22d, 1853; whereas, the date of the summons shows that this suit was instituted on the 10th day of March, 1853. A short time, it is true; but long enough to

save the question. The jury would not be authorized to infer that the claims, all or any, had an earlier maturity than the date of the letter.

5. Of the allegation that "many of the parties" to the notes were insolvent, or had left the country, there is no proof whatever.

I will here allude to a circumstance in proof, which just now escaped me, on the subject of the solvency of the parties at the date of the receipt. In the letter of March 22d, 1847, when the claims were probably not so accurately known, except, perhaps, from Wheeler's representations respecting them, the writer says, confidentially, "they are quite all good." But twelve months after, when writing the receipt, he speaks less hopefully, and says: "I am to endeavor to collect, and if collected," &c. This, in connection with the fact that he had been trying to collect them during the intervening twelve months, having reduced them from "nine or ten hundred dollars" down to "four or five hundred," is a persuasive fact from which to infer, that, instead of being then solvent, they were at least of doubtful solvency.

I respectfully ask that the judgment of the Circuit Court be reversed, and judgment final for defendant be here rendered on the demurrer to the evidence.

*Locke E. Houston*, for defendants in error.

1st. The first error complained of is, the judge of the court overruling defendant's demurrer to plaintiffs' second amended declaration. So far as the first ground of demurrer there alleged is concerned, I shall not trouble the court with an argument: the principle is too plain that the cause was not well taken. Certain claims were therein set out without naming them, but to the amount of from $400 to $500 worth, and we demanded them back; they were not returned. We then demanded the money on them, and that was refused. Had we not then the right of action?

The second cause set out in that demurrer was that the certificate sued on and undertaking therein, was voluntary, and that Moore got no consideration for it, and therefore he was not bound to perform the undertaking. That position is not tenable, because the money was to be paid on a debt that he himself was bound for, and one-half of which was his own debt; and yet Ragsdale was

furnishing him the means to pay it all, on the consideration that he would collect them and pay them over. But again, whether there was or not a consideration given Moore for collecting said claims, he was either bound to collect them and pay the money on said claims against him and Moore, or pay the money over to Ragsdale, or return the claims to Ragsdale or his representatives.

As to the third cause of demurrer to the second amended complaint of the plaintiffs below, I think it is not well taken, nor will it lie, because the declaration does distinctly and particularly aver that a demand was made of the said L. B. Moore to *hand over* the said claims mentioned in the said certificate of deposit, or *to pay* the money collected on them. The cause of demurrer is, therefore, not true *in fact*, or does not state the averments in the declaration fairly.

The fourth cause of demurrer to the second amended declaration was not well taken, because it matters not whether damages were sustained or not, plaintiffs were entitled to the claims or to the amount of the money called for, or were entitled to recover that amount in lieu of them. But the declaration does set out damages sustained in this, that the claims were lost to plaintiffs and to plaintiffs' intestate, by reason of the Statute of Limitations and the insolvency of the parties against whom they were held.

But again, the declaration avers that the claims were good and solvent claims, and were collectable, and yet they had not been collected and paid over, which made out a *prima facie* case against Moore.

Then comes the demurrer to the testimony introduced by plaintiffs below, and this settles the case.

2d. We proved on the part of the plaintiffs below that the notes were left on deposit by Ragsdale with Moore, to collect and apply to certain purposes, which he failed to do. And it does seem to me that after proving *that*, all the additional proof necessary for us to have made, in order to have insured a recovery, would have been that we made demand for the claims, or the money on them, and that it was refused; and here we might have rested our case. For the law will presume, until the contrary was proven, that the claims were worth what they called for, to wit, four or five hundred dollars; and certainly the law will not permit a bailee or agent to

Moore *v.* Gholson et al.

take claims for a *specific* purpose, and fail to accomplish that purpose, and then *retain* the claims or the money on them as his own, after demand was made for them, and yet he not be liable to an action by their owner.

But in this case we did not stop at that testimony, but actually introduced affirmative proof, under Moore's own hand, in the form of his letter to Ragsdale, that the claims were all quite good, and would be collected within a few weeks. We proved by the record in the case of *L. M. Wiley & Co.* v. *Moore & Ragsdale*, and by a record of the case of *L. B. Moore* v. *Gholson & Holder*, that Moore had paid the L. M. Wiley debt out of other means than these claims, and had sued Gholson & Holder, as administrators of Ragsdale, and recovered the money of them; so that it does seem that not only all was proven that was necessary to make out the case, but that we proved even more than was essential for that purpose.

In cases, however, of demurrers to testimony, it is the rule of our "Supreme Court that the court not only may draw all the inferences that a jury legitimately could draw from the testimony introduced, but it is bound to draw them." What inference, then, in this case, can there be, that would be necessary for a verdict of a jury, that the testimony does not afford ample grounds, to infer? If I am right in that, the court could not have done otherwise than as it did, in rendering judgment for plaintiffs below.

*Yerger* and *Rucks*, on same side,
Cited Tidd's Pr. 865; 2 Serg. & R. 185; 11 Wheat. 320; 27 Miss. R. 823.

SMITH, C. J., delivered the opinion of the court.

This suit was founded upon the receipt or written acknowledgment of the defendant, which is in the following words :—

"I have in my possession claims on various individuals, amounting to between four and five hundred dollars, being the residue of collaterals transferred to me by Wm. H. Wheeler, on account of claims due from —— to G. M. Ragsdale, for between nine and ten hundred dollars. Now, the first above-mentioned I am to endeavor to collect, and if collected, pay the same on a claim or claims now

sued on in the Circuit Court of Monroe county, Mississippi, against Moore & Ragsdale."

The defendant demurred to the complaint, assigning several causes of demurrer. The demurrer was overruled, and the defendant filed two pleas or answers. The first was a general denial of the allegations of the complaint. The second alleged a want of consideration in the instrument sued on. The cause was submitted to the jury; and, upon the introduction of the plaintiffs' evidence, a demurrer was filed thereto. The plaintiffs joined in the demurrer, and the issue was decided adversely to the defendant, and judgment accordingly was rendered against him.

The first question to be considered is, whether the court erred in overruling the demurrer to the complaint.

The grounds assumed in support of the demurrer, are: 1. That the complaint does not set out and describe, with sufficient certainty, the several claims referred to in the instrument sued upon; and 2. That the said instrument imports upon its face to be voluntary, and that no consideration is averred in the complaint. There were other special causes of demurrer assigned, but these appear to be, mainly, relied on.

The defendant, by his written acknowledgment, was in the possession of claims upon various individuals, which he was bound, if practicable, to collect, and to apply in payment of the joint debt of himself and the plaintiffs' intestate. When he failed, from negligence, to collect the claims, or having collected them, failed to apply the proceeds, as stipulated, a right of action would accrue in behalf of the intestate.

The complaint avers that the claims were valid claims against good and solvent men, and that they were not collected and paid, nor any part of them, upon the claims in suit against Moore & Ragsdale. The special facts in reference to those claims, must be supposed to lie exclusively within the knowledge of the defendant, and for that reason less particularity of statement was required in the complaint than would otherwise have been necessary. Gould's Pl. 183, sec. 32. The suit was brought to recover the whole of the claims; for failing entirely to collect and apply any part of the proceeds; and, as it was not essential, in order to enable the party to make his defence, that the complaint should have contained a

-minute and precise description of each of the said claims, it was clearly unnecessary to describe them with greater particularity than they are described in the receipt or written acknowledgment of the defendant.

The objection, based upon the alleged want of consideration in the instrument, and the absence of any averment of consideration in the complaint, is also untenable.

It was wholly immaterial whether the agreement to collect the claims, and apply the proceeds, was voluntary, or whether it was made upon an express and valuable consideration. The duty arising from the relation existing between the parties was, unquestionably, sufficient to sustain the agreement, whether the defendant was to receive compensation for his services or not. If the agreement was merely voluntary, he was bound to use only ordinary diligence in its performance; but, whether he was bound to strict or ordinary diligence, the right of action accrued in consequence of the violation of a duty incident to the relation of principal and agent. To entitle the plaintiffs to a recovery, it is only necessary for them to prove, that the claims were placed in the possession of the defendant, and that he failed, through negligence, to collect them; or that, having collected them, he failed to apply the proceeds according to the terms of his acknowledgment. It was, therefore, unnecessary to allege, in the complaint, any consideration for the undertaking.

The next question involves the propriety of the judgment on the demurrer to the evidence.

In reference to which, it is only necessary to state that, in our opinion, the evidence for the plaintiffs fully justified the decision of the court.

Judgment affirmed.